The next case, United States v. Hanson, has been submitted on the briefs, as has Hampi Arcos v. Mondy. The next case on the calendar for argument is Nassar v. JetBlue. Nassar v. JetBlue Good morning, Counsel. Good morning. May it please the Court, Jennifer Erickson-Bach, on behalf of Plaintiff Appellant Daniel Nassar and the proposed class. This morning, I'd like to reserve three minutes for rebuttal. I'll keep keeping track of my own time. All right. In this morning's appeal, we ask the Court to hold JetBlue Airways, a sophisticated global corporation, to the express terms of its own agreement. This result is warranted for three reasons. First, it's consistent with the analysis in the three federal cases that have considered the precise language that's before the Court this morning. Second, it's consistent with black-letter rules of contract interpretation that, among other things, require this Court to give full meaning to all material provisions within the agreement. And finally, holding an airline to the terms that the airline itself stipulates is consistent with the public policy undergirding the Airline Deregulation Act, as explained by the United States Supreme Court in the decision American Airlines v. Wolins. This morning, I intend to spend my time focusing on the first two arguments, but of course I welcome questions on any topic. Counsel, not to throw a curveball at you, but you may or may not know that we have a case following up after yours. And the question there is whether the airlines are even entitled to hold this money that has been refunded or partially refunded. And the TSA is claiming that the airlines don't have that authority. And you may know the 11th Circuit just came out with an opinion that said TSA has the right to those monies. If we were to conclude that TSA has the right to those monies, what effect does that have on this case? Because wouldn't that just mean the airlines don't have this money in the first place, so your class action would have to, I don't know, proceed against TSA? Or what would happen? We agree that the case has a significant impact on our appeal. I would disagree with the particular conclusion that you suggested. With regard to the other case that's pending, on Monday, the 11th Circuit held that the airlines' practice of issuing expiring credits did not constitute a refund under the TSA regulations. And I appreciate this court has yet to weigh in on the topic. But we believe that if that holding were to continue here, that it has a very strong effect on this appeal. And in particular, on the argument that JetBlue advances under the Woolens decision. Specifically, JetBlue, one of the main arguments in JetBlue's brief is that it would be improper for our case to proceed under Woolens because it requires the district court to enlarge the contract based on external policies. But what we would point out is that argument hinges on the court agreeing that the definition of the word refund is actually ambiguous. And here what we think the significance... Well, I'm not necessarily disagreeing with you on that point. But there's a preliminary point which I'm trying to grapple with, which is the 11th Circuit also held that the money did not belong. It had to be turned over to the TSA from the beginning. So the airlines never should have had it. Now, we'll have to figure that out. But if we adopted that, what would that mean for your case? Because you would be suing the airlines for money that they don't really have any entitlement to, if I understand that correctly. If, again, these are walking down hypotheticals. Sure. We certainly agree the airline doesn't have any entitlement to the money. But we do believe that we would still have a contractual remedy against JetBlue Airlines, regardless of where the money ultimately ends up. But what would be your remedy at that point? If we hold that JetBlue was not allowed to keep the money and it had to go back to TSA, what would your remedy against JetBlue be? In our view, the money is fungible. We would still have a remedy to recover the $5.20 TSA. But not from JetBlue because JetBlue wouldn't have it anymore. If your honors would permit, I would love to submit some supplemental briefing on that. I'm sorry? I would love to submit a supplemental briefing to address your question. It's not one that I had considered. That's fair. It's been a fast-moving week. Well, so let's look at the preemption issue then, which is one that's presented to us. Tell us your best argument as to why your claim isn't preempted by the Airline Deregulation Act. Under the Supreme Court decision in Woolens, there's an exception to the ADA preemption for claims that are brought under the terms of the contract that an airline itself has stipulated. And here we believe that's precisely what Mr. Nassar is attempting to do. Well, the sticking point in the case is whether or not the regulations under which you seek relief were sufficiently delineated in the contract. That's correct. Okay, so what's your response to the argument that those regulations were not sufficiently delineated? And what case supports your argument? Sure. We believe that the plain language of paragraph 32 clearly signals JetBlue's intent to incorporate TSA regulations into the terms of its agreement. The primary case that supports this holding is the Northern District of Texas opinion from 2009 in Clymer v. Southwest Airlines. But, Counsel, you know that's not precedent for us. So if we decline to follow that case, do you lose? No, I would disagree with that statement. You would disagree with what statement? That we would lose. Okay, tell me why you wouldn't lose. You said that's your best case. So if we decline to follow that case, why don't you lose if that's your best case? Because if you set aside Clymer and then the subsequent decisions, the Fifth Circuit decision in Bavacqua and the Southern District of California decision in the flight disruption litigation, all three of which include the identical analysis regarding the identical provisions, then there simply is no case that addresses the language before the court this morning. And so we would argue it's a blank slate. Even if you reject Clymer, Bavacqua, and the flight disruption litigation, that still doesn't give you the answer to what's occurring in our contract of carriage. So the contracted issue here says the contract will be performed in compliance with all applicable federal laws and regulations, which is a fairly general statement. And even if we were convinced by a district court decision from the Northern District of Texas, that could not override a decision from the Fifth Circuit. So the Fifth Circuit in, I don't know how to pronounce it, ONA, said that a statement that the contract needs to comply with all applicable laws doesn't convert it into an enforceable contractual term. So the Fifth Circuit seemed to reject the case that you're relying upon. We would respectfully disagree with that analysis on what the Fifth Circuit has said on this issue. The first thing that I would point out is that the decision in ONA, although it came just one year after Clymer, it doesn't mention Clymer by name or specifically discuss the contractual language that was an issue in Clymer. So we don't think there's any express abrogation in the ONA decision. Counsel, isn't there a little bit of difference between a contract that says they will adhere to all applicable regulations and one that specifically names the regulations that they are agreeing to be bound by? In this case, there was some specificity regarding the regulations. It wasn't just all applicable regulations. It was the specifically the TSA regulations. Yes, we would agree with that. And that analysis is consistent with what you see in the Fifth Circuit decision in Bavacqua, which came quite a bit after ONA. And there I would note that the panel in Bavacqua, composed of Fifth Circuit judges Jones, Smith, and Ho, looked specifically at the language in question and specifically noted, as Your Honor did, that it highlighted the TSA was an agency by which the airline had agreed to be bound. And then it also looked at the remaining language in the provision and affirmatively stated that that language indicated an intent to incorporate external regulations into the agreement. So we think Bavacqua unambiguously supports the outcome that we're urging in this case. And we think ONO doesn't undercut it because it doesn't expressly overrule Kleiner. And also, ONO is relying on the same underlying case law, Woollins and the Lynn T case from the Fifth Circuit, which is the same language that Kleiner relied on in reaching its conclusion. So we don't think that there's any abrogation there with regard to ONO and that the Fifth Circuit decision in Bavacqua should be controlling here. Moving on, if there's no other questions on the federal case law in issue, I would move on to the rules of contract interpretation. And we think that there are four primary rules that support the result that we're urging in this case. First and most important, as I mentioned in my roadmap, is the rule that the court should give full meaning and effect to all material provisions contained within an agreement. And we believe that's what we're asking the court to do here. The plain meaning of the paragraph 32 in JetBlue's contract of carriage acknowledges that it's not specifically listing the TSA regulations, but it nevertheless intends to be bound by those regulations as it performs its obligations under the contract. We believe that there's no way to read paragraph 32 and conclude that you don't have incorporation unless you don't give meaning to the second half of that paragraph. Under New York rules of contract law, you can tell what the intent of the language here is because it tracks that in a typical notwithstanding clause. And so while this is specific to New York, I think it's also common sense that a skilled drafter of a contract such as JetBlue Airlines is able to include a provision that acknowledges that it's doing something different, that it's going against the typical method for incorporating an external regulation and nevertheless signal its intent to effect the incorporation. And that's what we think is being reflected in the language here this morning. The third rule that we would urge the court to follow here is the rule that agreements are to be construed in accordance with the party's intent and the best evidence of intent can be found within the plain language contained in the four corners of the document. And here we think that paragraph 32 is clear on intent and we would encourage the court not to look outside the document. And then finally, the last rule is that contracts should be strictly construed against their drafter, especially contracts of adhesion such as the one here. Here we know that JetBlue Airlines was a sophisticated party capable of including whatever language it chose in its agreements and it chose to include this language. There's no reason to excuse JetBlue from the agreement that it voluntarily undertook. If the court has no further questions, I'll reserve the balance of my time for rebuttal. All right. Thank you, Counselor. Thank you. Good morning, Your Honors. May it please the court. Mark Johnston on behalf of the JetBlue Airways Corporation. I'd like to respond in the order of the questions that came from the panel, starting with the impact of the argument in the case to come later this morning as well as the decision of the 11th Circuit. That case, both the 11th Circuit and the case that this panel will hear later this morning, underscores that this is an area of federal regulation that the ADA specifically contemplated would be reserved for the federal authorities such as TSA and DOT. That the administration and regulation of the September 11th security fee, as it's called, has been reserved to those federal agencies. But you would agree then that the 2002 guidance, under the 2002 guidance you've been acting improperly here by refusing a full refund. I would not agree with that. Well, you just gave wholehearted support of the 11th Circuit. The reason I would not agree with that, Your Honor, is because guidance does not have the force and effect of law. So you disagree with the 11th Circuit opinion in that regard? I disagree with their conclusion that it's mandated under the regulation because the regulation does not specifically state that a refund in a non-refundable ticket context has to be made to the original form of payment. That this is a guidance, an interpretive instruction from the regulating agency. But there's case law Perez and the others cited in our brief that it doesn't have the force and effect of law. So I would disagree with the 11th Circuit on that point. But the broader point I'm trying to make is that— But all the good stuff you like out of the 11th Circuit. Yes, Your Honor. The broader point, though, is this is an area of federal regulation that Congress has explicitly reserved for the federal government. It seems very clear that under the federal regulation, the anticipation is that the customers are entitled to— maybe it's an overstatement to say they get the full 560 or 1120 back. I suppose there could be some, you know, costs associated with a non-traveling passenger. But the extra money is contemplated by the federal regulations to go back to the customer. That's what they're trying to do. You're saying this is an improper vehicle to do it. Maybe you're right. Yes. What can they do? Not that you need to be their attorney, but is there a mechanism? Yeah, there are complaints that can be filed with DOT. There are statutes that regulate unfair or deceptive practices within the airline industry. A complaint with DOT could trigger an investigation, a fine, a penalty, an order of injunctive relief. But that is in the administrative process, and that's how the Alaska case came to this panel. It went through a final agency determination, an appeal under the APA, and that's how it is before Your Honors later this morning. And that is the process by which Congress contemplated regulation of the TSA security fee. Yeah, except that we don't have any passengers or non-traveling passengers, however you want to, former passengers, potential passengers. We don't have them in the second case. That's what makes that case a little unusual. And so, I mean, we can decide this case in one way, but do we need to be more concerned about the bigger issue? Well, I would say that that's an issue for Congress. If they're going to allow a private right of action for collection or violation of this regulation, it has to be by statute. It cannot be by regulation, and that's the Buck decision from the First Circuit, which discusses the implied right of action doctrine and how effectively this case is a great example of an end run of that doctrine, because they're effectively, this case is just about a violation of a regulation. You cannot look to the contract of carriage and decipher any language saying that we will give you a refund on a non-refundable fare upon cancellation of the TSA fee. You have to go to an external regulation, and as Your Honor pointed out, you don't stop there because the regulation does not mandate a refund to the original form of payment. Then you have to go to agency guidance, which the Eleventh Circuit did do in interpreting the obligations there. But under Wollins, that is too far afield from the self-imposed obligation that is necessary to create an exception under a breach of contract theory. Counsel, I have a little more fundamental question. Is there anything in the Aviation and Transportation Security Act or the regulations that expresses any congressional intent that these security fees were to go to the airlines? That they were to remain with the airlines upon cancellation? That the airlines were to be the ultimate beneficiaries of this security deposit. What language would support a conclusion that the airlines are entitled to keep any of these fees? Is it in the statute? Is it in the regulations? What would support the argument that the airlines have any claim to these fees? I'm not aware of any authority, Your Honor. And I would defer to counsel who will be arguing that point more closely in the subsequent case today. And that's not our argument that JetBlue is entitled to keep this fee. In fact, JetBlue's practice has been upon cancellation to return the fee to TSA. I think it is separate and different than the other airlines. There's not a case vis-a-vis the TSA such as the Spirit case or the Alaska case later today involving JetBlue. But we wouldn't be here unless there were some funds that ultimately ended up in the coffers of JetBlue as opposed to the pocketbooks of the passengers. Well, and I'll represent the panel. This was not part of the complaint and this was on a Rule 12 motion. But JetBlue does not keep any of the money in its coffers. It remits upon cancellation or, I'm sorry, upon expiration of the credits. It remits the TSA fee to TSA. But what about the vouchers? Is that remitting anything if the flight is canceled? Isn't that why we're here because that represents money that was not technically refunded? Well, that's separate and apart, yes, Your Honor, from the TSA carve-out of the 560 or the 1120. There is a credit pursuant to the contract of carriage that the passenger receives, which under the regulations there's no obligation that it be to the original form of payment in a non-refundable ticket context. And that is what the bargain between the airline and the passenger is when they purchase a non-refundable fare. But your point is if it's $185 credit and the credit is not used within the 60 days or the one year, your position is you give the $11.20 or the $5.60 to TSA and then you would take the rest as revenue. That is JetBlue's practice, yes. Is that in the record anywhere? No, it is not. We were simply on a Rule 12 motion challenging the allegations in the complaint. So to be clear, JetBlue is taking a different position from the other airlines in that it is not saying we refunded the money and so we get the credit on this account to the TSA. Yes, my understanding is JetBlue's practice is different than the other airlines in that regard and that's why JetBlue has not been issued a penalty or any finding by TSA as a result of the audit process. Is there any, and this may not be fair, and just tell me if it's not something within your knowledge that you've considered, but is it your position that this is just an instance of the wrong defendant and that the plaintiffs should have brought their claims against the government? I think it's a little bit more nuanced. I think wrong defendant, yes, because there's no private right of action for a violation of this regulation. I think, as I stated earlier, that the right recourse for the passengers is a complaint with DOT and that the federal regulators then would assess and weigh the conduct of the air carrier. So, Counselor, just so I understand your position, are you saying that all security fees that were collected on behalf of the TSA were actually remitted to the TSA? Yes. Is that your position? Yes, it's a somewhat I could elaborate a little bit more. Upon payment or purchase of a ticket, the fee is remitted to TSA. Upon cancellation, the airline gets a credit. They're paid monthly on a ledger. And if a passenger cancels their ticket, a credit is given back to JetBlue. JetBlue issues a credit to the travel bank of the passenger that's good for one year. And upon expiration, if that credit is not used, then JetBlue remits the 560 back to TSA. The credit comes back from TSA? Yes, upon cancellation. That's confusing to me. The entire process is very confusing, and I've had to speak with many accountants just to explain it to me how it works. Well, but that implies the TSA thought they weren't entitled to the TSA fee, which is contrary. We'll have to get into that in the next case. Again, I think a lot of this discussion is better suited to the subsequent case. But if I understand what you're explaining to us, your position is different from the other airlines and that JetBlue doesn't then say, well, what we did was technically a refund to the customer and keep the money. Instead, you're saying you then remit the credit you received. You end up remitting that back to the TSA. That is JetBlue's practice, and I do believe it is different than some of the other air carriers. And so what the plaintiffs are seeking is the amount that was not refunded for the fare, not the security deposit. In this case, it's the security fee. But why, if the security fee was remitted to TSA, why would JetBlue be liable for that? Well, I don't think it's liable for multiple reasons. But, yes, at a very practical level, you're correct, Your Honor, above and beyond that it's preempted under Rollins either way. I'm missing something here. Your Honor, if you remitted the security fee in every single instance where a flight is canceled to TSA, that's your position, right? Just a point, a finer point. Upon expiration of the credit, when the flight is canceled, the fee comes from TSA back to JetBlue because they've remitted it upon purchase. Right. And that goes in the passenger's travel bank, and it's good for one year. However, if that credit expires, the passenger never uses it, JetBlue gives the money back to TSA. I'd like to speak just briefly about Kleiner, Ono, Bevacqua, this series of cases in the Fifth Circuit. We definitely believe that Kleiner was abrogated, although not specifically by Ono. But Ono stated that in that case, the Northwest contract carriage, which self-imposed obligations, is a large stretch from the simple references to the need to comply with all applicable law. That's exactly what the Kleiner court did. There was no specificity. There was no regulation. And Ono said that that is far too broad a statement to create a self-imposed obligation. And here, the gravamen of the argument is that subject to compliance with a litany of applicable laws is a self-imposed obligation by JetBlue. That's simply not true. The airline must comply with these federal regulations whether or not it recognizes it or not in its contract of carriage. And as other courts in the Ninth Circuit have recognized, subject to is not the same as incorporating herein. It's simply a statement of recognition by the airline that it is subject to these regulations. And the later clause that NASA relies upon regarding the nevertheless binding on the air carrier and passenger once again is just notice to the passenger that notwithstanding everything that's in this contract of carriage, there are additional federal obligations and requirements that are imposed on not just the airline but the passenger as well. One of the first things you hear when you board a flight is it's a violation of FAA regulations to smoke on this aircraft or to disable a smoke detector, etc. That's an obligation that the FAA places on the passenger. Nowhere in the contract of carriage is that obligation spelled out. But the contract of carriage is alerting the passenger that in addition to the terms of this contract, there are other federal regulations that are binding on both the passenger and the airline. That is not to say it's incorporated as a contractual term. And indeed, their reading would have all of FAA DOTs and TSA's regulations as incorporated terms. But that is not what Wolin's instructs. Wolin says it must be a self-imposed obligation and it must be one that can be read without enhancement by any external policy or regulation. You cannot read JetBlue's contract of carriage and decipher what the contractual obligation is without going to the regulation regarding TSA fees. And then even the guidances that have been issued, the 2002, the 2020, the GAO report. In fact, the complaint characterizes all of these sources as secondary sources. So they even admit that these are external and separate and apart from the contract. All right, counsel. Thank you. Are there any questions? Thank you. All right. Rebuttal. Good morning. Just a couple of quick points on rebuttal. I think I would start with the language in the contract of carriage regarding subject to. Here, if you just stop at subject to, we would agree that it's a much harder case for incorporation. But, of course, the full language in paragraph 32 includes additional language, both referencing the fact that it hasn't specifically listed the regulations, which is, of course, a typical way that you would incorporate external regulations. The nevertheless language. It also uses affirmative active language discussing the regulations being binding upon the airline as it performs its obligations. And then it also specifically lists the TSA as a specific agency whose regulations it agrees to be bound by. So here we don't believe you can stop reading after subject to. Instead, you need to consider the entirety of the paragraph taken together. Counsel, do you take issue with opposing counsel's representation that JetBlue ultimately refunds all security deposits, transmits all security deposits to TSA? We haven't had discovery on the issue yet. So it is hard for me to say what they do or don't do with them. Well, if that's true, then what's your cause of action? I think, as I sat at counsel table thinking through your honors questions, I think the answer is that once we give Jet once the passenger gives JetBlue the money, whatever JetBlue does with it, it can remit it to TSA. It can spend it on other things. It doesn't alleviate JetBlue from its obligation to refund the money to the passenger. I think that's what we would come up with in response to that. I don't understand that argument, though, because if that is sort of a tax, I mean, you wouldn't get a tax refund. If I go into a store and pay a dollar and I have 6% tax and I take it back, I mean, if that tax has already been paid to the state, I don't think you get an automatic refund of the dollar and six cents. I mean, you do of the item, but it's not intuitive to me that now I think a lot of times I think in the tax refund, they do give it back because then they say, well, we don't owe the tax on that. But that's the indeterminate way in which this TSA fee works. And I guess until the 11th Circuit spoke, nobody knew what the heck was supposed to happen with it. It is a unique situation. We would agree. And I would hopefully be able to shed some light on it in a supplemental. So do you think that your clients have a claim against the TSA or the government in some fashion for this? These funds, assuming what opposing counsel is represented is accurate, that JetBlue does not have the 11 dollars and 20 cents. They remitted it to the TSA in compliance with TSA guidance and regulations, which you're alleging they've incorporated into the contract. So what's your remedy? Do you have a remedy against the government? We think whatever else is clear, at least following the 11th Circuit decision, is that our clients are entitled to the refund that the TSA regulations contemplate. And I appreciate your honor's point that it's an open question whether the refund then would come from JetBlue or come from the TSA. There's no further questions. We would urge the court to reverse. Thank you, counsel. Thank you, counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, NELSON, BADE